IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| R. BRETT HART, | * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 3:07-CV-64(CDL) |
| IRA EDWARDS, JR., individually and in his official capacity as Sheriff of Clarke County, CLARKE COUNTY SHERIFF'S OFFICE, and the UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY, GEORGIA, | * * * | |
| | * | |
| Defendants. | * | |
| | * | |

O R D E R

Clarke County Sheriff Ira Edwards, Jr. terminated the employment of Plaintiff R. Brett Hart, who had served as jail commander prior to his termination. Plaintiff contends that he was unlawfully terminated based upon racial and religious discrimination. He brings this employment discrimination action against Sheriff Edwards, individually and in his official capacity as Clarke County Sheriff, the Clarke County Sheriff's Office ("CCSO"), and the Unified Government of Athens-Clarke County, Georgia ("the County") (collectively, "Defendants"). Plaintiff alleges violations of the Equal Protection Clause of the United States Constitution and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). He also alleges retaliation based on race, in violation of 42 U.S.C. § 1981 ("§ 1981") and retaliation based on

1

race and religion, in violation of Title VII.  Presently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 35).  For the following reasons, the Court grants Defendants' motion.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When a movant moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  To meet this burden, the movant may point to "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted).  In the alternative, the movant may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  A movant is not required to come forth with evidence negating the nonmovant's claim.  *See id.*

Once a movant meets its burden, the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 324.  The nonmoving party must "go beyond the pleadings," *id.*, and point to "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*,

2

477 U.S. at 324.   A nonmovant is not required to produce evidence in a form that would be admissible at trial, but he or she must point to some evidence to show a genuine issue of material fact.   *Celotex Corp.*, 477 U.S. at 324.   Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file.   *Id.; accord* Fed. R. Civ. P. 56(e)(1).

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmovant and drawing all justifiable inferences in his or her favor, no genuine issues of material fact remain to be tried.   Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment.   *Anderson*, 477 U.S. at 247-48.   A fact is *material* if it is relevant or necessary to the outcome of the suit.   *Id.* at 248.   A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmovant-there must be more than "some metaphysical doubt as to the material facts."   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the facts reveal the following:

**I.   The CCSO Chain of Command**

Defendant Ira Edwards, a black male, is the Clarke County Sheriff. Edwards has been Sheriff of Clarke County since January 1, 2001. (Edwards Aff. ¶ 2, Dec. 3, 2008 [hereinafter Edwards Aff. I].) Gene Mays, a black male, serves as the chief deputy sheriff for the CCSO and reports directly to Sheriff Edwards. (Mays Dep. 10:1-3, Oct. 1, 2008 (noting that he was second in command to Sheriff Edwards); *see* Mays Aff. ¶ 2, Dec. 1, 2008.) Mays is responsible for the daily operations of the CCSO and supervises the jail commander. (Mays Dep. 5:9-16.) Plaintiff, a white male, served as jail commander for Clarke County from January 24, 2000 until his termination on April 7, 2006. As jail commander, Plaintiff reported directly to Mays and had little personal interaction with Sheriff Edwards. (Pl.'s Statement of Material Facts as to which there are Genuine Issues to be Tried [hereinafter Pl.'s SOF] ¶ 8; *see* Pl.'s Decl. ¶ 3, Jan. 9, 2009.) Corporal Doug Mattocks conducts investigations for the Internal Affairs at the jail. (Mattocks Dep. 4:7-5:2, Sept. 16, 2008.) Sergeant Michael Young supervises Corporal Mattocks in his Internal Affairs investigations. (Young Dep. 4:1-5:3, Oct. 1, 2008; *see* Young Aff. ¶ 2, Dec. 1, 2008.)

## II. Plaintiff's Employment as Jail Commander

Plaintiff was hired as jail commander for the Clarke County Jail by former Sheriff Jerry Massey on January 24, 2000. Throughout his employment as jail commander, Plaintiff was an at-will employee who served at the pleasure of the sheriff. After Sheriff Edwards won the

Democratic primary for sheriff in 2000, Plaintiff met with Sheriff Edwards in August 2000 to inform him of his interest in remaining the jail commander. During the meeting, Sheriff Edwards asked Plaintiff if he would have a problem working for a black sheriff;[1] Plaintiff said it would not be a problem because he had "worked for a black sheriff prior to coming to work for Sheriff Massey." (Pl.'s Dep. 13:9-11, 17:4-9, Sept. 13, 2008; *see also* Pl.'s SOF ¶ 4.) In October 2000, Plaintiff and Sheriff Edwards met for a second time, at which point Sheriff Edwards informed Plaintiff that he was going to retain Plaintiff as jail commander and that Plaintiff would be reporting directly to Mays.

While employed under Sheriff Edwards, Plaintiff received "superior" performance ratings on his performance reviews. In April 2004, an audit of the Clarke County Jail revealed that the jail was "well managed" and that most of the staff "enjoy[ed] working at the Clarke County Jail and [were] happy with the way it [was] managed and the way they [were] treated by supervisory and management staff." (Ex. 22 to Pl.'s SOF, A Report of the Operational Audit at the Clarke County Jail [hereinafter Audit] 11.) Although Plaintiff received superior ratings and the jail was reported as well managed, Plaintiff received numerous comments in his performance reviews addressing particular areas of his performance that were in need of

---

[1]Sheriff Edwards does not recall asking Plaintiff if he had a problem working with a black sheriff; he only recalls asking Plaintiff he "he had a problem working for [him] as sheriff." (Edwards Dep. 30:13-25, Sept. 16, 2008.)

improvement.   These areas were documented in the "Opportunities for Further Development and Improvement" section of Plaintiff's performance reviews.   (*See* Ex. 18 to Pl.'s SOF, Performance Planning & Review Form [hereinafter Performance Form] 07/01/01-04/15/02; Ex. 19 to Pl.'s SOF, Performance Form 04/16/02-04/15/03; Ex. 20 to Pl.'s SOF, Performance Form 04/16/03-04/15/04; Ex. 21 to Pl.'s SOF, Performance Form 04/16/04-04/15/05.)   Specifically, Plaintiff was asked to improve his listening skills, to seek out opportunities to build trust among the deputies, to manage and supervise the jail better, and to maintain the cleanliness of the facilities.   These improvement areas were documented in all of Plaintiff's performance reviews.   Plaintiff's superiors, Sheriff Edwards and Mays, also informed Plaintiff of these deficiencies.   (*See, e.g.*, Pl.'s Dep. 29:18-25, 22:18-23:19.)   Furthermore, Sheriff Edwards was notified by several officials within the Athens-Clarke County Government, including Manager Alan Reddish, Finance Department Director John Culpepper, Athens-Clarke County Attorney Bill Berryman, and Department of Human Resources Director Harry Owens, of Plaintiff's difficulties in working with others.   (Edwards Aff. ¶ 2, Jan. 26, 2009 [hereinafter Edwards Aff. II].)

**III. Plaintiff's Termination**

On March 20, 2006, Sheriff Edwards contacted Owens and requested information about the process of terminating at-will employees not covered by the merit system.   (*See* Edwards Aff. I ¶ 6; *see also*

Edwards Dep. 57:6-18.)   Owens sent Sheriff Edwards a Memorandum of Understanding documenting the at-will status of employees at the CCSO.   On April 4, 2006, Plaintiff signed the Memorandum of Understanding, which provided, in pertinent part, that Plaintiff's "assignment to the rank of Sheriff's Chief Jailer [was] made by the Sheriff of Clarke County and that [he] serve[d] in [his] present capacity at the discretion of the Sheriff." (Ex. 5 to Edwards Dep., Memorandum of Understanding (Sheriff's Chief Jailer).)

On April 7, 2006, Sheriff Edwards informed Plaintiff that he was being terminated from his position as jail commander.   Sheriff Edwards provided Plaintiff with a Notice of Termination, which provided, in pertinent part, that Sheriff Edwards sought "a change in management of the jail operations." (Ex. 15 to Pl.'s SOF; *see* Pl.'s SOF ¶ 46 ("During the meeting on April 7, 2006, Edwards advised [Plaintiff] he was being terminated based upon his review and evaluation of the totality of the Jail Operations and a desire to have a change in management.").)   Subsequent to Plaintiff's termination, Sheriff Edwards stated in a Georgia Department of Labor ("GDOL") form that Plaintiff's discharge was a result of a change in management. (Ex. 16 to Pl.'s SOF.)   In a response to Plaintiff's EEOC charge, Sheriff Edwards stated that

> [t]hroughout his tenure as jail commander, [Plaintiff]
> showed deficiencies in his capacity to manage people and
> his shortcomings in the area of people skills were noted in
> various performance evaluations.   The imperial management
> style displayed by [Plaintiff] interfered with his capacity
> to build trust and confidence among the jail staff and was

7

> manifested in his unwillingness or inability to accept
> suggestions or to solicit advice from others.  His lack of
> communication skills coupled with his management style
> undermined the CCSO both inside the organization as well as
> its dealings with other agencies and officials of local
> government.

(Ex. 17 to Pl.'s SOF [hereinafter EEOC Charge Response] 2.)

Shortly after Plaintiff's termination, Sheriff Edwards appointed Captain Alexander Burke, a black male, as interim jail commander. Sheriff Edwards gave no directives to Burke other than to "[m]aintain smooth operation of the jail." (Burke Dep. 26:17-27:1, Oct. 1, 2008; *see* Edwards Dep. 132:13-17.)  Burke served in that capacity until October 2006, when Captain Jack Mitchell, a white male, was appointed the permanent jail commander.

## IV. Alleged Nuwaubian Influences in the County Jail

Plaintiff contends that his alleged poor performance was not the reason for his termination, but that he was terminated because he "is white and not a Nuwaubian[2] with black supremacist views." (Pl.'s Resp. to Defs.' Summ. J. Br. [hereinafter Pl.'s Resp.] 13.) Specifically, Plaintiff maintains that he was terminated because of Sheriff Edwards's alleged ties with Nuwaubian Dwight York,[3] also known

---

[2]According to Plaintiff, Nuwaubians are members of a black supremacist hate group. (*See* Ex. 3 to Pl.'s SOF; *see also* Pl.'s SOF ¶ 15.)

[3]Dwight York is the founder of Nuwaubianism. (*See* Ex. 3 to Pl.'s SOF.)  York established the Nuwaubian compound in Putnam County, Georgia. (Pl.'s SOF ¶¶ 14, 20.)  York was convicted of child molestation in 2004 and is currently serving his 135-year sentence at the United States Penitentiary Administrative Maximum Facility ("ADX") in Florence, Colorado.

as Malachi York, and because of Sheriff Edwards's involvement in certain incidents involving Nuwaubian deputies at the County jail.

A.   Sheriff Edwards's Alleged Nuwaubian Ties

During the 2000 election, York contributed $2,000 to Sheriff Edwards's campaign, which was documented in Sheriff Edwards's financial disclosures. (Ex. 4 to Pl.'s SOF, Campaign Contribution Disclosure Report 2.)  In October 2000, Sheriff Edwards attended a NAACP function where he was photographed with York. (Ex. 7 to Pl.'s SOF.)  At that time, Sheriff Edwards did not know that York was a Nuwaubian; he understood him to be a leader of a masonic lodge. (Edwards Dep. 16:11-12.)  Sheriff Edwards has never participated in any Nuwaubian functions and has never visited the Nuwaubian compound in Putnam County, Georgia.  Furthermore, Sheriff Edwards has never been a Nuwaubian member.  (Edwards Aff. I ¶ 8; *see* Edwards Dep. 17:23-25.)

In 2004, shortly after Sheriff Edwards took office, he hired deputies Leon Adams, Bobby Dixon, William Walker,[4] Antiwan Dean, and James Fedrick, who were alleged to have Nuwaubian ties.  Sheriff Edwards acknowledged that he had information that Deputies Dixon, York, and Adams were Nuwaubians during their pre-employment phase, but he hired them anyway based on the recommendations of his command staff.  (Edwards Dep. 21:7-24:7.)  Plaintiff recommended the

---

[4]Walker changed his last name to York, and consequently, certain documents refer to him as William York. (*See* Williams Aff. ¶ 5, Dec. 3, 2008.)  For the purposes of this Order, the Court will refer to him as William Walker.

employment of all of these deputies except Dixon.  (Williams Aff. 4-8.)

B.   The Distribution of Nuwaubian Literature

In the summer of 2005, Plaintiff was informed by Lieutenant Anthony Goings and Chaplain Tommy York that Deputy Walker had distributed Nuwaubian literature to an inmate without proper authorization.  Plaintiff never communicated the matter to Sheriff Edwards, but Plaintiff did forward an e-mail related to the subject to Mays.  Mays scheduled a meeting with Plaintiff and the Athens-Clarke County Attorney, Bill Berryman, regarding the situation.  As a follow-up to the meeting, Plaintiff instructed Lieutenant Goings to informally admonish Deputy Walker for his behavior.  Plaintiff believed that Berryman should not have been brought into the discussion and that Deputy Walker's admonishment should have been documented on either a counseling report or a written reprimand.

C.   The Montgomery Letter

On March 7, 2006, Burke brought a fax to Plaintiff that had been received by the ADX in Florence, Colorado.  The fax contained a mailing label addressed to York and a typewritten letter addressed to Raabubaat Baba[5] from Deputy Anthony Montgomery.[6]  Plaintiff concluded that the handwriting on the mailing label matched Deputy Montgomery's

---

[5]York has been known by a multitude of aliases over the years, including Dwight York and Raabubaat Baba, many of which he used simultaneously.  (*See* Ex. 3 to Pl.'s SOF.)

[6]Deputy Montgomery was well known as a Nuwaubian by the CCSO staff. (*See* Pl.'s SOF ¶ 25; *see also* Pl.'s Decl. ¶ 8.)

handwriting, although the address on file for Deputy Montgomery was not the same address as reflected on the fax.  Plaintiff believed that the Montgomery letter violated the CCSO policy which provided that deputies could not communicate with known felons.  (Ex. 4 to Pl.'s Dep.)  Plaintiff sent a copy of the letter to Mays on March 7, 2006.  Upon receipt of Plaintiff's e-mail, Mays forwarded a copy to Mitchell and Sheriff Edwards.

After receiving the e-mail, Mitchell suggested that the Athens-Clarke County attorney be contacted for an opinion involving the matter to determine whether the correspondence violated CCSO policy.  On March 8, 2006, Mays met with Plaintiff and Burke.  Mays instructed Plaintiff to obtain the original letter and the original envelope from the ADX facility.  On March 9, 2006, Mays forwarded Plaintiff's e-mail to Athens-Clarke County attorneys Berryman, Holly Hilton, and Amy Gellins.  A meeting was held with Athens-Clarke County attorney Gellins on March 14, 2006.  After the meeting, the CCSO determined that the Montgomery letter was not sufficient to warrant disciplinary action against Deputy Montgomery.

**V.   Plaintiff's Claims and Defendants' Motion for Summary Judgment**

On June 21, 2007, Plaintiff filed an action against Sheriff Edwards in his official and individual capacities, the CCSO, and the County, alleging claims of (1) racial discrimination under the Equal Protection Clause brought through § 1983 (Compl. ¶¶ 135-136); (2) religious discrimination under the Equal Protection Clause brought

11

through § 1983 (*id.* ¶¶ 137-138); (3) racial discrimination under Title VII (*id.* ¶¶ 139-140); (4) religious discrimination under Title VII (*id.* ¶¶ 141-142); (5) retaliation based on race under Title VII (*id.* ¶¶ 143-144); (6) retaliation based on religion under Title VII (*id.* ¶¶ 145-146); (7) retaliation based on race under § 1981 (*id.* ¶¶ 143-144); and (8) retaliation based on religion under § 1981 (*id.* ¶¶ 145-146).   The Court finds that Plaintiff has abandoned his religious discrimination claims and his retaliation claims.[7]

---

[7]Plaintiff did not respond to Defendants' Motion for Summary Judgment on these claims. (*See generally* Pl.'s Resp.)  Because "a party may not rely on his pleadings to avoid judgment against him[,] . . . grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) (internal quotation marks and citations omitted); *see Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (affirming the district court's finding that plaintiff abandoned one of its claims because it was not raised as a ground for summary judgment).  Therefore, because Plaintiff abandoned these claims, Defendants are entitled to summary judgment as to Plaintiff's religious discrimination claims under Title VII and the Equal Protection Clause brought through § 1983, as well as his retaliation claims based on race and religion under Title VII and § 1981.  Even assuming *arguendo* that Plaintiff did not abandon these claims, Defendants are still entitled to summary judgment.

First, § 1981 is inapplicable to claims of retaliation based on religion. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 n.1 (11th Cir. 2001).  Second, in regard to Plaintiff's religious discrimination claims under Title VII and the Equal Protection Clause, there is no evidence in the record to suggest that Plaintiff was replaced by someone of another religion or that he was treated differently than similarly-situated employees of another religion. *See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).  Third, regarding Plaintiff's retaliation claims based on race under Title VII and § 1981, as well as Plaintiff's retaliation claim based on religion under Title VII, Plaintiff has failed to point the Court to any evidence in the record to suggest that Plaintiff engaged in a "statutorily protected activity" or suffered an adverse employment action as a result. *See Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (per curiam).

Therefore, the following discussion focuses upon Plaintiff's alleged racial discrimination termination claim.

DISCUSSION

Plaintiff claims that he was fired based upon his race in violation of Title VII and the Equal Protection Clause.  Defendants assert that Plaintiff's employment was terminated for legitimate non-discriminatory reasons.  Sheriff Edwards, in his individual capacity, the CCSO, and the County also maintain that they were not Plaintiff's employer, and therefore, they have no liability under Title VII.  As to Plaintiff's § 1983 claim for violation of the Equal Protection Clause, Defendants argue that no evidence exists from which a reasonable jury could conclude that Plaintiff was terminated based upon his race.  The CCSO and the County further contend that they had no control over the termination decision and thus have no § 1983 liability.  Finally, Sheriff Edwards in his individual capacity seeks qualified immunity.  The Court will address Plaintiff's Title VII and Equal Protection claims separately, although some parts of the analysis are the same for both claims.

**I.   Plaintiff's Title VII Claim**

    <u>A.</u>   <u>Plaintiff's Employer</u>

Plaintiff's Title VII claim may only be brought against his employer.  For the reasons set forth below, the Court concludes that Sheriff Edwards in his official capacity, and no other entity, is Plaintiff's employer for Title VII purposes.  It is well established

13

that Title VII does not impose individual liability. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (per curiam) ("Individual capacity suits under Title VII are . . . inappropriate."); *see also Cross v. State of Ala., State Dep't of Mental Health and Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995) (noting that defendant, in his individual capacity, was not an "employer" within the meaning of Title VII). Therefore, Sheriff Edwards, in his individual capacity, is entitled to summary judgment as to Plaintiff's Title VII claim.

Plaintiff also asserts a Title VII claim against the County. However, the County is not Plaintiff's "employer" for Title VII purposes. The determination of whether an entity constitutes an employer for Title VII purposes revolves around the scope of the control and supervision over the employment relationship. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc). Plaintiff points to no evidence that the County exercises control over the employment decisions of Sheriff Edwards. Accordingly, the County is not an "employer" for Title VII purposes, and therefore, the County is entitled to summary judgment as to Plaintiff's Title VII claim.

Finally, Plaintiff attempts to assert a Title VII claim against the CCSO. However, a county sheriff represents the sheriff's office and therefore, Sheriff Edwards, in his official capacity, is the

14

proper employer.  Therefore, the CCSO is entitled to summary judgment as to Plaintiff's Title VII claim.

> B.   The "Personal Staff" Exception under Title VII

Notwithstanding the fact that Sheriff Edwards, in his official capacity, is Plaintiff's employer, Sheriff Edwards maintains that Plaintiff was a member of his "personal staff" and thus is not deemed to be his "employee" for Title VII purposes.  Under Title VII,

> [t]he term "employee" means an individual employed by an employer, *except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff*, or an appointee on the policy making level of an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f) (emphasis added).  The determination of whether an individual is considered an employee under Title VII is governed by federal law.  *See E.E.O.C. v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985); *see also Calderon v. Martin County*, 639 F.2d 271, 272-73 (5th Cir. Mar. 1981).[8]   Title VII does not define the term "personal staff," and the Eleventh Circuit has never addressed whether members of a sheriff's staff are considered the "personal staff" of an elected official.  The Court finds that the following factors should be considered in determining whether Plaintiff falls within the

---

[8]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

"personal staff" exception to Title VII: (1) Sheriff Edwards's authority to hire, promote, and terminate Plaintiff, (2) Plaintiff's level within the chain of command, (3) Sheriff Edwards's intimate working relationship with Plaintiff, (4) Plaintiff's involvement in policy-making decisions, (5) Plaintiff's involvement on Sheriff Edwards's 2000 election campaign, and (6) Sheriff Edwards's direct supervision of Plaintiff. *See Cromer v. Brown*, 88 F.3d 1315, 1323-24 (4th Cir. 1996); *United States v. Gregory*, 818 F.2d 1114, 1117 (4th Cir. 1987); *see also Frazier v. Smith*, 12 F. Supp. 2d 1362, 1367 (S.D. Ga. 1998).

Construing the facts in the light most favorable to Plaintiff, the Court cannot find as a matter of law that Plaintiff was a member of Sheriff Edwards's personal staff. Although Sheriff Edwards possessed the authority to hire, promote, and terminate Plaintiff, this fact alone is insufficient to conclude that Plaintiff was a member of his personal staff. Plaintiff had little interaction with Sheriff Edwards while employed as the jail commander. (Pl.'s Decl. ¶ 3.) Plaintiff reported to and dealt primarily with Mays, who was responsible for the daily operation of the sheriff's department. (*Id.; see* Edwards Dep. 27:8-17.) Plaintiff did not maintain an intimate working relationship with Sheriff Edwards and had minimal personal interaction with him. (Pl.'s Decl. ¶ 3.) Furthermore, there is no evidence in the record to suggest that Plaintiff worked on Sheriff Edwards's 2000 election campaign. Based on the present

record, Sheriff Edwards has not presented sufficient evidence for the Court to find as a matter of law that Plaintiff falls within the "personal staff" exception of Title VII. *Cf. Williams v. Glover*, No. 1:03-CV-1097-WKW, 2006 WL 861353, at *7 (M.D. Ala. Mar. 31, 2006) (finding that commander of jail operations was a member of sheriff's personal staff because the commander was the sheriff's "alter ego" within the jail for supervisory and administrative purposes, the commander had a close working relationship with sheriff, and they communicated daily). Accordingly, Sheriff Edwards, in his official capacity, is not entitled to summary judgment based upon the "personal staff" exception.

C.   Wrongful Termination under Title VII

Sheriff Edwards also argues that he is entitled to summary judgment because no reasonable factfinder could conclude that Plaintiff's employment was terminated because of his race. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Plaintiff may establish a prima facie case of discrimination by presenting either direct or circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Plaintiff has not pointed the Court to any direct evidence of discriminatory intent. Therefore, Plaintiff must establish

17

discriminatory intent using circumstantial evidence applying the framework established in *McDonnell Douglas Corp.* and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Under this framework, Plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class."[9] *Maynard*, 343 F.3d at 1289. If Plaintiff establishes a prima facie case, then the burden shifts to Sheriff Edwards to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once Sheriff Edwards satisfies this intermediate burden of production, Plaintiff has the opportunity to discredit Sheriff Edwards's proffered explanations for his decision. Plaintiff may do this "either directly by persuading the [C]ourt that a discriminatory reason more likely motivated [Sheriff Edwards] or indirectly by showing that [Sheriff Edwards's] proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. The burden to establish pretext merges

---

[9]Plaintiff has failed to produce any evidence to support a finding that he was treated differently than similarly-situated employees outside of his class. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam) ("To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects . . . ." (internal quotation marks omitted) (alteration in original)). Therefore, Plaintiff's claim rests solely on the contention that he was replaced with someone outside of his protected class.

with Plaintiff's ultimate burden of proof of intentional discrimination. *Id.*

>    1.  *Plaintiff's Prima Facie Case*

In this case, the elements of Plaintiff's prima facie case have been satisfied. It is undisputed that Plaintiff is a member of a protected class, that he was qualified for his position, and that he suffered an adverse employment action when he was terminated from his position as jail commander. (*See* Br. in Supp. of Defs.' Mot. Summ. J. 22 ("Defendants do not dispute the first three elements of the prima face case . . . .").) The Court also finds that Plaintiff was replaced by someone outside his protected class when Sheriff Edwards filled the vacant position with Captain Burke, a black male. The Court recognizes that Captain Burke was only assigned as the "interim" replacement and that the permanent replacement was a white male. Nevertheless, for purposes of a prima facie case, the Court finds that the race of the interim replacement may be considered. *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 854 (D.C. Cir. 2006) ("[W]hether a terminated Title VII plaintiff's position has been filled on a temporary or permanent basis should not affect the determination of whether the position has been filled for purposes of the prima facie case."); *see also Catchings v. Hooper's Trailer Sales, Inc.*, No. 5:06-CV-418 (HL), 2008 WL 687320, at *7 (M.D. Ga. Mar. 11, 2008). Having satisfied his prima facie case, Plaintiff has created an inference of discrimination that must be rebutted by

Sheriff Edwards, who may do so by articulating a legitimate non-discriminatory reason for the termination. *See Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).

> 2. *Sheriff Edwards's Legitimate, Non-discriminatory Reasons*

An employer's burden to rebut an inference of discrimination by presenting legitimate, non-discriminatory reasons for its employment action is "exceedingly light." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam) (internal quotation marks omitted).   In this case, Sheriff Edwards has met this burden. Sheriff Edwards contends that Plaintiff failed to follow instructions, lacked people skills, failed to manage the jail sufficiently, and alienated his subordinates within the CCSO. Sheriff Edwards also asserts that Plaintiff's "lack of communication skills coupled with his management style undermined the CCSO both inside that organization as well as its dealings with other agencies and officials of local government."   (EEOC Charge Response 2.) Therefore, the burden shifts back to Plaintiff to show that these reasons are pretextual.

> 3. *Plaintiff's Evidence of Pretext*

A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted).  Plaintiff may demonstrate that Sheriff Edwards's reasons are pretextual by

revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted). The inquiry into pretext requires the Court to determine "whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (internal quotation marks omitted). Plaintiff must meet each of Sheriff Edwards's proffered reasons "head on" and "rebut" each one. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004). If Plaintiff cannot create a genuine issue of material fact as to whether each of Sheriff Edwards's articulated reasons is pretextual, then Sheriff Edwards is entitled to summary judgment.

Plaintiff argues that Sheriff Edwards's proffered non-discriminatory reasons for termination are inconsistent with (1) Plaintiff's performance reviews, (2) the results of the 2004 Audit and the management of the jail subsequent to Plaintiff's termination, and (3) Sheriff Edwards's GDOL form and Plaintiff's April 7, 2007 termination meeting and notice letter. (Pl.'s Resp. 5-9.) The Court finds that Plaintiff has failed to produce sufficient evidence of

21

pretext—he has not shown that the proffered reasons show such inconsistencies that a reasonable factfinder could find them unworthy of credence.   First, although Plaintiff received superior ratings throughout his tenure as jail commander, Plaintiff also received numerous comments addressing areas of his performance that were in need of vast improvement.   Regardless of whether they were referred to as "deficiencies" or not, Plaintiff was aware of certain areas that he was requested to improve, including his management and listening skills.   (*See, e.g.*, Pl.'s Dep. 22:17-23:19.)   Sheriff Edwards's non-discriminatory reasons for termination are entirely consistent with the comments Plaintiff received on his performance reviews.[10]

Second, although the 2004 Audit suggested that the Clarke County Jail was well-managed, the Audit did not specifically address Plaintiff's performance as jail commander, and therefore, it provides no basis for Plaintiff's conclusion that the results of the 2004 Audit were inconsistent with Sheriff Edwards's reasons for Plaintiff's termination.   Further, Plaintiff's contention that the

---

[10]Plaintiff contends that the EEOC charge response was the first time Sheriff Edwards informed Plaintiff that he was "deficient" in his performance as jail commander.   (*See* Pl.'s Resp. 8.)   However, this argument is simply not supported by the record, especially considering the fact that Plaintiff was told several times by Sheriff Edwards and Chief Deputy Mays that areas of his performance required vast improvement. (*See, e.g.*, Pl.'s Dep. 29:18-25, 22:18-23:19.)   Therefore, while Plaintiff contends that the "alleged shortcomings and deficiencies" articulated in Sheriff Edwards's EEOC charge response are "unsupported by [Plaintiff's] performance evaluations[,]" (Pl.'s Resp. 8), no reasonable factfinder could agree.

management of the jail did not change after Plaintiff's termination is not supported by the record. Although there is evidence in the record to suggest that Sheriff Edwards gave Burke no directives as interim jail commander other than to "[m]aintain smooth operation of the jail," (Burke Dep. 26:17-27:1), this evidence alone does not imply that there was no change to the management of the jail subsequent to Plaintiff's termination.

Finally, Plaintiff contends that the reason articulated in the GDOL form and termination notice–a desire for a change in management–is inherently inconsistent with Sheriff Edwards's proffered non-discriminatory reasons for Plaintiff's termination. The Court disagrees. Although Sheriff Edwards, at one point, stated that Plaintiff's termination was a result of a desire in a change in management, Sheriff Edwards's proffered non-discriminatory reasons are not inherently inconsistent with that reason, and no reasonable factfinder could find otherwise. *Cf. Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192, 1194-95 (11th Cir. 2004) (recognizing that employer's reasons for employee's termination–violation of rule found in contract, noncompete agreement, and unwritten policy–were unworthy of credence because employee was not under contract or subject to a noncompete agreement and there was no evidence of the unwritten policy). Rather, Sheriff Edwards's proffered reasons are merely additional considerations, and not pretextual. *See Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428

23

(11th Cir. 1998) (noting that evidence that an employer had additional reasons for terminating an employee does not prove pretext).  Thus, because Plaintiff has failed to produce any evidence from which a reasonable factfinder could conclude that Sheriff Edwards's proffered reasons for termination were pretext for racial discrimination, the Court finds that Sheriff Edwards, in his official capacity, is entitled to summary judgment as to Plaintiff's Title VII claim.

## II.  Plaintiff's § 1983 Equal Protection Claim

In addition to his Title VII claim, Plaintiff asserts a claim under § 1983 that his alleged racially motivated termination violates his rights under the Equal Protection Clause.  He asserts this constitutional claim against Sheriff Edwards in his official and individual capacities, the CCSO, and the County.  The Court finds that Sheriff Edwards is entitled to summary judgment in his official capacity for the same reasons that he is entitled to summary judgment on Plaintiff's Title VII claim.  Additionally, Sheriff Edwards is entitled to qualified immunity in his individual capacity. Finally, the CCSO is entitled to summary judgment because it is not the proper legal entity responsible for the termination decision, and the County is likewise entitled to summary judgment because it was not involved in any way in the termination decision.

### A.   Sheriff Edwards in his Official Capacity

24

The analysis of a disparate treatment claim under § 1983 based upon a denial of equal protection is identical to the analysis under Title VII.   *See Crawford*, 529 F.3d at 970 ("[T]he analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same.").   Therefore, for the same reasons stated earlier, Sheriff Edwards, in his official capacity, is entitled to summary judgment on Plaintiff's § 1983 equal protection claim.

B.    Sheriff Edwards in his Individual Capacity

Sheriff Edwards, in his individual capacity, seeks qualified immunity as a matter of law.   "Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right."   *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).   In order to receive qualified immunity, Sheriff Edwards must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful act occurred.   *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).   It is clear in this case that Sheriff Edwards was acting within his discretionary authority when he terminated Plaintiff.   *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1321 (11th Cir. 2000) (recognizing that employer-sheriff was acting within her discretionary authority when she made various employment decisions that were at issue in the case).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. In determining whether Plaintiff has met his burden in this case, the Court must determine whether the facts alleged show that Sheriff Edwards's conduct violated a constitutional or statutory right. As discussed above, Plaintiff has not met his burden of showing that a genuine issue of material fact exists on his claim that Sheriff Edwards terminated him because of his race. Therefore, Plaintiff cannot show that Sheriff Edwards violated his constitutional right to equal protection by terminating him. Thus, Sheriff Edwards, in his individual capacity, is entitled to qualified immunity, and accordingly, his motion for summary judgment as to Plaintiff's § 1983 claim is granted.

    C.   <u>The CCSO</u>

The CCSO contends that it is entitled to summary judgment as to Plaintiff's § 1983 claim because it is not a legal entity capable of suit under § 1983. (Br. in Supp. of Mot. Summ. J. 39.) The Court agrees. The "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located," Fed. R. Civ. P. 17(b)(3), which in this case is Georgia law. The state of Georgia "recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to

26

sue." *Ga. Insurers Insolvency Pool v. Elbert County*, 258 Ga. 317, 318, 368 S.E.2d 500, 502 (1988) (internal quotation marks omitted). The Eleventh Circuit has recognized that a sheriff's department is not considered a legal entity subject to a § 1983 suit under Georgia law. *See Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (per curiam) (affirming the district court's finding that the Douglas County Sheriff's Department was not a legal entity capable of suit under § 1983); *cf. Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992) (recognizing that Jefferson County Sheriff's Department under Alabama law was not legal entity subject to liability under § 1983). Therefore, because the Court finds that the CCSO is not capable of suit under § 1983, the CCSO is entitled to summary judgment as to Plaintiff's § 1983 claim.

    D.   The County

    The County contends that it is entitled to summary judgment as to Plaintiff's § 1983 equal protection claim because it does not exercise control over the personnel matters or decisions of the sheriff.   A county is liable when the county's "official policy" causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).   Plaintiff may establish a constitutional deprivation under § 1983 by either identifying "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th

Cir. 2003) (en banc); *see Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713 (11th Cir. 1992) (per curiam).

Because the County does not have an officially adopted policy regarding the sheriff's employment decisions, Plaintiff must show that the County "has a custom or practice of permitting [a constitutional violation] and that the county's custom or practice is the moving force [behind] the constitutional violation." *Grech*, 335 F.3d at 1330 (second alteration in original) (internal quotation marks omitted). Under this theory, Plaintiff "(1) must show that [the County] . . . has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for [the County] concerning the act alleged to have caused the particular constitutional violation in issue." *Id.*

In this case, the County's § 1983 liability hinges on whether, under Georgia law, the County wields control over the sheriff in his employment decision-making functions. *Id.* at 1331-32. It is clear that the County lacks control over the sheriff in his employment decision-making functions. Under Georgia law, the sheriff's office is not a division or subunit of the county in which it resides or that county's governing body. The state legislature has the exclusive authority to establish and to control a sheriff's powers and duties. *See Bd. of Comm'rs of Randolph County v. Wilson*, 260 Ga. 482, 482, 396 S.E.2d 903, 903 (1990) ("The sheriff . . . is an

elected, constitutional officer; he is subject to the charge of the General Assembly and is not an employee of the county commission."). Under O.C.G.A. § 15-16-23, the sheriff and his office have the authority and responsibility to hire and fire employees. *See* Ga. Const. Art. IX, § 2, ¶ 1(c)(1); *cf. Wilson*, 260 Ga. at 483, 396 S.E.2d at 905 ("[T]he board of commissioners cannot discharge the sheriff's deputies."). Furthermore, although the County pays the salaries of the sheriff and his deputies, it is because the State so mandates. *See* O.C.G.A. § 15-16-20; *see also Chaffin v. Calhoun*, 262 Ga. 202, 203, 415 S.E.2d 906, 907 (1992) ("[A]lthough the county commission has the power and the duty to issue a budget, the county commission may not dictate to the sheriff how that budget will be spent in the exercise of his duties."). Therefore, the Court finds that the Plaintiff in this case has failed to produce any evidence from which a reasonable factfinder could conclude that the County exercises sufficient control over the sheriff's employment decisions to have § 1983 liability for the termination of Plaintiff's employment. Accordingly, the County is entitled to summary judgment as to Plaintiff's § 1983 claim.

CONCLUSION

As discussed above, the Court grants Defendants' Motion for Summary Judgment (Doc. 35).

IT IS SO ORDERED, this 11th day of March, 2009.

29

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE